**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| IN RE TJX COMPANIES RETAIL SECURITY BREACH LITIGATION | )<br>)<br>)<br>)<br>)<br>) |
| THIS DOCUMENT RELATES TO:<br><br>CONSUMER TRACK ACTIONS | )<br>)<br>)<br>)<br>) |

Master Docket No. 07-10162-WGY

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT THE TJX COMPANIES, INC.'S MOTION TO DISMISS THE CONSOLIDATED COMPLAINT**

Defendant The TJX Companies, Inc. ("TJX") respectfully submits this memorandum of law in support of its motion to dismiss the consolidated complaint (the "Complaint") pursuant to Fed. R. Civ. P. 12(b)(6).

**BACKGROUND**

TJX is an off-price retailer of apparel and home fashions sold through T.J. Maxx, Marshalls, A.J. Wright, Home Goods and Bob's Stores (the "TJX stores"). On January 17, 2007, TJX announced that it had suffered an unauthorized intrusion or intrusions into the computer systems that process and store customer information, and that certain customer information had been compromised (the "intrusion").

Beginning virtually immediately thereafter, various lawsuits on behalf of putative consumer classes were filed in several jurisdictions, including seven putative class actions in the District of Massachusetts. On April 4, 2007, this Court consolidated for pre-trial proceedings the pending suits in the District of Massachusetts, and ordered the consolidation of all future suits filed in the District of Massachusetts relating to the same subject matter. A consolidated

complaint relating to the seven pending putative consumer class actions now pending before the Court was filed on May 9, 2007.

## Statement of Position

Plaintiffs are faced with a wall of judicial decisions in prior security breach cases holding that consumers who are merely exposed to identity theft, or who then take steps or incur costs to thwart possible identity theft, have incurred no cognizable damage. These cases were decided against the backdrop of our national credit and debit card system, in which card-issuing banks – and not consumers – bear the cost of stolen credit. In an obvious attempt to hurdle that wall, plaintiffs have selected as named plaintiffs for the consolidated complaint those few plaintiffs who allege out-of-pocket costs of a more exotic type, such as time lost from work or fees for new drivers' licenses. However, even these plaintiffs have failed to allege an injury or damage recoverable under the law. For that reason, the entire complaint should be dismissed.

## The Consumer Plaintiffs

The consumer plaintiffs named in the consolidated complaint are all persons who used credit or debit cards in effecting transactions, or returned unreceipted goods, at TJX stores during the period of time affected by the intrusion. Their allegations regarding the effects of that circumstance, however, are limited. There is not a single plaintiff who alleges that his or her identity was actually stolen, or that he or she has had to pay for any fraudulent credit or debit charges. *Not one* of the plaintiffs alleges anything like having a loan account or a checking account opened by someone else in his or her name. Indeed, most of the plaintiffs do not even allege that the intrusion resulted in false charges on their existing credit or debit cards ("payment cards"), and those who do make such allegations concede that any such fraudulent charges were,

in any event, waived or reimbursed.   Instead, the consumer plaintiffs' purported injuries and

damage can be classified into several fundamental categories, as follows:

- **"Exposure" alone.**  Most broadly, the consolidated complaint purports to be brought on behalf of consumer plaintiffs who have had "personal or financial data stolen or compromised from TJX's computer systems,"[1] without regard to whether subsequent use of that person's data by a third party ever occurred.  The complaints in the underlying individual actions make even clearer that the putative class purports to include consumers who merely shopped at TJX stores during the period at issue and whose payment cards or personal information may have been exposed in the data breach, but with no allegation that the consumers actually suffered any impact at all (the "exposure-only plaintiffs").[2]

- **Payment card cancellation**.  In an effort to allege more than "exposure" only, various of the named plaintiffs in the consolidated complaint allege that, because their payment card information was potentially compromised, either they or their card issuer cancelled their card as a preventative measure.[3]  These plaintiffs claim that they suffered a variety of damages due to such cancellations, *i.e.,* that they were inconvenienced by not having an active payment card until a new card was issued,[4] that automatic billing payments were interrupted, in some cases resulting in the assessment of late payment fees,[5] or that they lost time spent in addressing their finances.[6]

- **Drivers' license exposure**.  Several of the named plaintiffs plead damage only in the form of possible exposure of their drivers' license information, which in some cases contained their social security number.  These plaintiffs' drivers' license information was collected at the TJX stores when they made unreceipted returns.  They allege that TJX notified them that their drivers' license information may have been compromised in the intrusion,[7] or just that they made returns to TJX stores without a receipt and believe their information may have been among the data accessed.[8]  They claim as a result that the exposure of their information inconvenienced them and exposed them to a "risk of fraud

---

[1] Compl. ¶ 1.

[2] *E.g.*, Mace Compl. (Civ. No. 07-cv-10162) ¶ 17; Arians Compl. (Civ. No. 07-cv-10754) ¶¶ 8, 9; Mascolo-Brown Compl. (Civ. No. 07-cv-10769) ¶ 8, 9.   *See Randolph v. ING Life Ins. & Annuity Co.*, No. 06-1228 (CKK), 2007 WL 565872, at *4 (D.D.C. Feb. 20, 2007) ("[A]n allegation of increased risk of identity theft due to lost or stolen personal data, without more, is insufficient to demonstrate a cognizable injury.").

[3] Compl. ¶¶ 55-58 (Plaintiff Anne Cohen); 60-62 (Plaintiff ACohen Marketing & Public Relations, LLC); 63-64 (Plaintiff Julie Buckley); 80 (Plaintiff Jitka Parmet); 85 (Plaintiff Kimberly Myck-Rawson).

[4] *E.g.,* Compl. ¶¶ 57-58.

[5] *E.g.,* Compl. ¶¶ 56, 61.

[6] Compl. ¶ 62.

[7] Compl. ¶¶ 66-68 (Plaintiff LaQuita Kearney); 71-73 (Plaintiff Laura Lerner); 86-87 (Plaintiff Deborah Wilson).

[8] Compl. ¶¶ 59 (Plaintiff Anne Cohen); 63, 65 (Plaintiff Julie Buckley).

and identity theft,"[9] and hence they undertook preventative measures, such as ordering new drivers' licenses (including for a fee),[10] obtaining credit reports, and activating fraud alerts.[11]

- **Inconvenience in addressing fraudulent card activity**.  A smaller number of named plaintiffs allege that they experienced fraudulent activity on their payment card.[12]  These plaintiffs submit that, although the fraudulent charges were intercepted[13] or later reversed or paid by the payment card issuers, they took time off from work to dispute the charges,[14] or were otherwise inconvenienced by the subsequent cancellations of their payment cards.[15]  They also allege that, having been subjected to the risk of fraud and identity theft, they undertook preventative measures, such as cancelling cards on other accounts.[16]

- **Stress, anxiety and embarrassment**.  Finally, certain plaintiffs allege that, as a result of the injuries alleged above, they experienced stress, anxiety and embarrassment.[17,18]

While TJX certainly understands and empathizes with the substantial inconvenience and concern that the criminal intrusion may have caused its customers, nonetheless TJX submits that it cannot be held liable for the class plaintiffs' purported injuries as alleged in the consolidated Complaint for the following legal reasons.

## ARGUMENT

### I.   THE NAMED PLAINTIFFS LACK STANDING TO ASSERT CLAIMS FOR RELIEF BECAUSE THEY ALLEGE NO COGNIZABLE INJURY

A plaintiff seeking to invoke the jurisdiction of the federal courts must satisfy Article

---

[9] Compl. ¶ 88.

[10] Compl. ¶ 73; *see also* ¶ 91.

[11] Compl. ¶¶ 67-68, 73; *see also* ¶¶ 90, 92.

[12] Compl. ¶¶ 74-75 (Plaintiff Robert Mann); 76-80 (Plaintiff Jitka Parmet); 81-85 (Plaintiff Kimberly Myck-Rawson).

[13] Compl. ¶ 82.

[14] Compl. ¶ 75.

[15] Compl. ¶ 84.

[16] Compl. ¶ 75.

[17] Compl. ¶ 70, 77.

[18] However, a successful claim for emotional distress damages stemming from a negligence claim must do more than allege "mere upset, dismay, humiliation, grief and anger," but must also allege attendant physical symptoms.  *See Gutierrez v. Mass. Bay Transp. Auth.*, 437 Mass. 396, 412 (2002).

III's standing requirements.  *See Council of Ins. Agents & Brokers v. Juarbe-Jiminez*, 443 F.3d 103, 107 (1st Cir. 2006) ("The constitutional [standing] constraints are designed to ensure compliance with Article III's 'case or controversy' requirement; they require that the plaintiff allege a sufficient personal stake in the outcome of the controversy.").  Central among those requirements is the necessity that a plaintiff allege an "injury in fact," an "invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical."  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (internal citations and quotation marks omitted).  Constitutional standing also requires a causal connection between the injury alleged and the conduct complained of, such that the alleged injury is not the result of the action of some third party not before the court.  *See id.*  In putative class action litigation, the named plaintiffs must personally allege cognizable injury, and cannot satisfy their standing burden in reliance upon injury allegedly suffered by some unnamed member of the putative class.  *See Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 40 n. 20 (1976).

Here, the named plaintiffs cannot meet their standing burden, because they fail to allege a cognizable injury in fact and, in some instances, fail to allege a causal connection between the injury alleged and the conduct complained of.

A.      **Mere Exposure of Personal Information Does Not Constitute a Cognizable Injury**

The exposure-only plaintiffs' claims must be dismissed.  Courts have recognized that a heightened risk of future identity theft arising from the exposure of a customer's personal information fails to satisfy Article III's injury requirement.  *See Randolph*, 2007 WL 565872, at *4 (collecting authorities).  For instance, in *Key v. DSW, Inc.*, a consumer brought a putative class action asserting various common law claims in the wake of an unauthorized intrusion into a

retailer's information systems.  454 F. Supp. 2d 684, 686 (S.D. Ohio 2006).  By way of damages, the complaint alleged that the DSW intrusion subjected plaintiff and the putative class to "a substantially increased risk of identity theft, and [they had] incurred the cost and inconvenience of, among other things, canceling credit cards, closing checking accounts, ordering new checks, obtaining credit reports and purchasing identity and/or credit monitoring."  *Id.*  Rejecting the DSW plaintiff's argument that a substantial increase in the risk of future financial harm and these attendant costs sufficed to convey standing, the court dismissed the action, embracing the principle that such alleged harms cannot constitute an actual or imminent injury.  *Id.* at 689-90; *see also Randolph*, 2007 WL 565872, at *3-5 (dismissing claims of plaintiffs whose social security numbers were contained on stolen laptop for failure to plead an actual or imminent injury).

Here, the injury the named plaintiffs in this category allege is no different than in *DSW*, but rather consists only of the mere possibility that exposure of the plaintiffs' payment card information could theoretically result in some undefined harm in the future.  *See Key*, 454 F. Supp. 2d at 690; *Giordano v. Wachovia Securities LLC*, No. 06-476 (JBS), 2006 WL 2177036, at *4 (D.N.J. July 31, 2006) ("Plaintiff's claims . . . are based on nothing more than the chance – or 'odds' – that she will be the victim of wrongdoing at some unidentified point in the indefinite future.").  However, the mere prospect of injury or damage is not sufficient to convey standing, and the exposure-only plaintiffs' claims must be dismissed.

### B.    Alleged Damages Resulting from Payment Card Cancellations are not Cognizable Injuries Caused by TJX's Alleged Conduct

For many of the same reasons, the named plaintiffs' lack of standing persists even when plaintiffs' allegations extend beyond mere exposure and allege damages arising from preventative measures designed to prevent possible payment card fraud.  Thus, several of the

named plaintiffs allege that they suffered inconvenience and sustained other costs because payment card issuers preemptively cancelled their cards after learning of the intrusion. Others claim they sustained the same damages because they voluntarily cancelled their own cards in response to news reports. In the case of cancellations initiated by card issuers, any such costs imposed on these named plaintiffs result from "the independent action of some third party not before the court," *i.e.*, the card issuer, not TJX. And as such, these costs, as the result of actions of a third party not before the court, are not recoverable. *See Lujan*, 504 U.S. at 560. In the case of voluntary cancellations of payment cards, these actions are prophylactic measures, intended not to shield plaintiffs from injury that has already occurred, but to thwart future fraud. Such costs result, not from actual or imminent injury, but from preventative measures taken in anticipation of an injury that has not materialized, and may never materialize. As such, claims for these costs are also not recoverable. *See Forbes v. Wells Fargo Bank, N.A.*, 420 F. Supp. 2d 1018, 1021 (D. Minn. 2006).

Thus, in *Hendricks v. DSW Shoe Warehouse, Inc.*, a customer sued DSW after receiving a notification that her credit card information had been compromised during DSW's unauthorized intrusion. 444 F. Supp. 2d 775, 779-80 (W.D. Mich. 2006). The court held that, even assuming that identity theft was a serious threat and credit monitoring would mitigate the risk of harm, plaintiff failed to allege cognizable damages for her breach of contract claim. *Id*. at 780. In doing so, the court emphasized that the plaintiff failed to allege "that her personal information has been used, that she or any other putative class member has been held liable for any fraudulent charges to a credit or debit card, or that her credit or that of any other putative class member has been damaged." *Id*. at 777. Similarly, the named plaintiffs alleging payment card cancellation allege none of these injuries, but instead contend they have been damaged by

10566480_9

preventative measures taken to avoid those harms.  These plaintiffs' claims therefore do not plead an injury in fact which satisfies Article III's standing requirements.

**C.  The Exposure of Certain Plaintiffs' Drivers' License Information is not Cognizable Injury**

Those named plaintiffs who allege they have been injured by the exposure, or potential exposure, of their drivers' license information also fail to plead a cognizable injury.  A straightforward application of the standards articulated in the legal precedent cited above demonstrates that plaintiffs cannot rely on the mere possibility that they might sustain injury in the future to properly plead injury in fact.

Similarly, any costs or inconvenience plaintiffs may have incurred taking preventative measures, such as ordering new drivers' licenses or obtaining credit reports, are not cognizable injuries in fact, because plaintiffs "overlook the fact that their expenditure of time and money was not the result of any present injury, but rather the anticipation of future injury that has not materialized."  *Forbes*, 420 F. Supp. 2d at 1021; *see also Giordano*, 2006 WL 2177036, at *4 ("Plaintiff's allegations that, as a result of Wachovia's actions, she will incur costs associated with obtaining credit monitoring services in order to prevent identity theft simply does not rise to the level of creating a concrete and particularized injury.").  In sum, the named plaintiffs who allege they have been damaged by the exposure of their drivers' license information fail to plead a cognizable injury for purposes of Article III, and the portions of the consolidated Complaint alleging their claims should be dismissed.

**D.  The Limited Fraudulent Activity the Named Plaintiffs Allege Does Not Constitute Cognizable Injury Caused by TJX's Alleged Conduct**

Three named plaintiffs allege that fraudulent transactions were attempted, or did appear,

10566480_9

on their accounts.[19]   None of these plaintiffs allege, however, that they have incurred personal liability for the fraudulent charges.   Moreover, two of these plaintiffs fail to sufficiently allege that their personal information was exposed *as a result of* TJX's conduct.   *See Lujan*, 504 U.S. at 560.[20]   Instead, these two plaintiffs speculate that the fraudulent activity on their cards (for which they have incurred no personal liability) resulted from the TJX intrusion.   They base such speculation on the fact that such charges "were similar in description to fraudulent charges reported in the media and on the internet by other victims of the TJX security breach," or because they "believe that [their] card information was stolen from TJX."   Compl. ¶¶ 74, 79.   These plaintiffs cannot rely, however, on the mere "fact" that fraudulent charges appeared, or were attempted, on their accounts during the same time frame as the TJX intrusion to establish the causation necessary to support their claims of injury.   *See Stollenwerk v. Tri-West Healthcare Alliance*, No. 03-0185PHXSRB, 2005 WL 2465906, at *7 (D. Ariz. Sept. 6, 2005) ("The mere use of such information in the course of acts of identity fraud, therefore, does not permit a finder of fact to draw the reasonable inference that the unidentified identity thieves obtained it from Defendant.").   Fraudulent credit card activity and identity theft occur every day, even in the absence of intrusions such as that perpetrated at TJX, and courts recognize that fact.   In *Stollenwerk*, for instance, several plaintiffs initiated a class action against the defendant after a burglar stole several hard drives that contained employees' data from its offices, including one

---

[19] *See* Compl. ¶¶ 74 (Plaintiff Robert Mann); 78-79 (Plaintiff Jitka Parmet); 81-85 (Plaintiff Kimberly Myck-Rawson).

[20] The third, Plaintiff Myck-Rawson, alleges that her card issuer "cancelled her card immediately" after learning that an unauthorized party attempted to use the card.   Compl. ¶ 82.   In this respect, her claim of injury is indistinguishable from those plaintiffs described *supra* at I.B.   Ms. Myck-Rawson does not allege that she has been held responsible for fraudulent charges, or that her credit has been damaged in any way, but instead claims injury in the form of inconvenience stemming from preventative measures undertaken by her card issuer.   For the reasons already described, her allegations do not suffice as a basis for standing.

plaintiff who discovered that several new, unauthorized credit accounts had been opened in his name. *Id*. at *1. The court denied plaintiff's claim on the ground of lack of causation, reasoning that "to determine that one event caused another merely because the first preceded the second is a classical example of *post hoc ergo propter hoc* ('after this, therefore because of this'), a logical fallacy." *Id*. at *7. While the causation issue in *Stollenwerk* arose in the context of a negligence claim, the Court should apply the same analysis here insofar as Article III requires plaintiffs to assert standing. *See Lujan*, 504 U.S. at 560. Absent a sufficient allegation of causation, plaintiffs have failed to plead that they sustained an actual or imminent injury due to TJX's alleged conduct.

Therefore, the Complaint should be dismissed in its entirety because of the plaintiffs' failure to allege a cognizable injury arising from the intrusion, and these plaintiffs therefore lack standing to bring their claims.

## II.   COUNT I OF THE COMPLAINT ALLEGING NEGLIGENCE SHOULD BE DISMISSED

For the reasons set forth above, plaintiffs' negligence claims in Count I must be dismissed because of plaintiffs' failure to allege that TJX's breach of a legal duty owed to them was the proximate cause of an "actual loss." *See Bernal v. Weitz*, 54 Mass.App.Ct. 394, 396 (2002) ("Actual damages or loss are an essential element of the tort of negligence."); *Int'l Mobiles Corp. v. Corroon & Black/Fairfield & Ellis, Inc.*, 29 Mass.App.Ct. 215, 217-19 (1990) ("A negligence claim cannot be maintained and, therefore, does not accrue, without a showing of some harm resulting from the negligence . . . the authorities are chary of treating the threat of future harm without realization of some tangible harm . . . as the basis for concluding that damage has occurred . . . .").

Even assuming, however, that any of the named plaintiffs were deemed to have the necessary Article III standing to pursue their claims, the negligence count asserted in Count I in the Complaint should nonetheless be dismissed because the only "damages" alleged therein are "economic losses" which are unrecoverable under the economic loss doctrine.

The economic loss doctrine bars the recovery of purely economic losses in tort actions, absent personal injury or physical damage to one's property.  *See FMR Corp. v. Boston Edison Co.*, 415 Mass. 393, 395 (1993) ("We have recently affirmed that purely economic losses are unrecoverable in tort and strict liability actions in the absence of personal injury or property damage.  We see no reason to abandon this long-standing rule.") (internal citation omitted); *see also Aldrich v. ADD, Inc.*, 437 Mass. 213, 222 (2002); *Garweth v. Boston Edison Co.*, 415 Mass. 303, 305 (1993); *Bay State-Spray & Provincetown S.S., Inc. v. Caterpillar Tractor Co.,* 404 Mass. 103, 107 (1989); *Stop & Shop Cos. v. Fisher,* 387 Mass. 889, 893-894 (1983); *Marcil v. John Deere Indus. Equip. Co.,* 9 Mass. App. Ct. 625, 630 (1980).

Here, the named plaintiffs have not alleged any personal injury or physical damage to their property arising from TJX's putative negligence.  Indeed, even assuming, *arguendo*, that fraudulent charges to the named plaintiffs' payment card accounts could be considered "damage to property," none of the named plaintiffs alleges that they (as opposed to their issuing banks) have had to sustain the cost of any fraudulent charges.  Instead, costs and lost time allegedly associated with obtaining new cards and credit monitoring services are purely economic losses, and are therefore not recoverable in a negligence action.  *See Learning Express v. Ray-Matt Enters.*, 74 F. Supp. 2d 79, 87 (D. Mass. 1999) (Young, C.J.) (granting motion to dismiss under the economic loss doctrine where negligence counts "alleged neither personal injury nor property

damage"); *see also Swartz v. Schering-Plough Corp.*, 53 F. Supp. 2d 95, 104 (D. Mass. 1999) (Young, C.J.) (same).[21]

Heightened probability of future harm, as has been alleged here, also does not constitute recoverable property damages. *See Berish v. Bornstein*, 2006 WL 2221924, at *20 (Mass. Super. May 22, 2006) ("In any event, the mere possibility of future personal injury or property damage is insufficient property damage to avoid the economic loss doctrine and permit recovery in negligence.") *citing Sebago, Inc. v. Beazer East, Inc.,* 18 F. Supp. 2d 70, 94-95 (D. Mass. 1998). Here, the "damages" alleged by the named plaintiffs are barred by operation of the economic loss doctrine, and Count I of the Consolidated Complaint sounding in negligence should be dismissed.

## III.   COUNTS IV AND V ALLEGING VIOLATION OF M.G.L. CH. 93A SHOULD BE DISMISSED

### A.   M.G.L. Ch. 93A Does Not Apply to Claims of Non-Massachusetts Plaintiffs

The Court should dismiss Counts IV and V of the Complaint to the extent such counts purport to assert claims on behalf of plaintiffs who are residents of states other than the Commonwealth of Massachusetts.

---

[21] Indeed, a Massachusetts court recently held that the economic loss doctrine precludes recovery for losses arising from a data breach and dismissed an associated negligence claim. In *CUMIS Ins. Soc. v. BJ's Wholesale Club*, No. 05-1158, *slip op.* (Mass. Super. Ct. Dec. 1, 2005), attached as Ex. A to Decl. of Brian R. Blais ("Blais Decl"), an insurer and various credit unions brought negligence claims after a retailer was victimized by a data breach. The insurer had covered various costs incurred by the credit unions which issued credit and debit cards accessed during the breach. *Id.*, *slip op.* at 2-3, 8-9. The court dismissed the negligence claims and explained:

> [T]he negligence alleged . . . did not result in any personal injury or damage to property. The negligence alleged resulted in purely economic losses. Consequently, the claims are barred by the economic loss doctrine.

*Id.*, *slip op.* at 9.

10566480_9

By its plain terms, § 2 of Chapter 93A proscribes unfair and deceptive trade practices "in the conduct of any trade or commerce," which is defined to encompass "any trade or commerce directly or indirectly *affecting the people of this commonwealth*."  Mass. Gen. Laws ch. 93A § 1(b) (emphasis added); *see also Ciardi v. F. Hoffmann-La Roche, Ltd.*, 436 Mass. 53, 66-7 (2002) ("We read the language of G.L. c. 93A as a clear statement of legislative policy to protect *Massachusetts* consumers through the authorization of such indirect purchaser actions.") (emphasis added).  As such, the statute clearly expresses an intent to protect only Massachusetts consumers, and not those in other states.

Moreover, the basic policy underlying consumer protection statutes is not the regulation of corporate conduct, but the compensation of consumers.  *See In re Pharmaceutical Ind. Average Wholesale Price Litig.*, 230 F.R.D. 61, 83 (D. Mass. 2005); *In re Relafen Antitrust Litig.*, 221 F.R.D. 260, 277 (D. Mass. 2004) (Young, C.J.) ("[T]he primary aim of . . . consumer protection laws generally . . . is compensating consumers, not policing corporate conduct."); *see also Lyon v. Caterpillar, Inc.*, 194 F.R.D. 206, 216 (E.D. Pa. 2000) ("[S]tate consumer protection acts are designed to protect *the residents of the states in which the statutes are promulgated*.") (emphasis added).  As a result, extending the benefits of Chapter 93A to consumers nationwide is inconsistent not only with the specific language of the statute but also with its purpose. Therefore, the Chapter 93A claims of non-Massachusetts residents should be dismissed.

**B.    Plaintiffs' M.G.L. Ch. 93A Claims Fail Because the Allegedly Actionable Conduct did not Cause Loss**

Moreover, for those claims where Chapter 93A, § 9 may apply, plaintiffs cannot satisfy the statute's loss and causation requirements.  Even if a practice is allegedly unfair or deceptive, a consumer may only recover if that practice causes loss.  *See Hershenow v. Enterprise Rent-A-Car Co. of Boston, Inc.*, 445 Mass. 790, 792 (2006).  As *Hershenow* clarified, Chapter 93A

demands a "causal connection between the deceptive act and an adverse consequence or loss." *Id.* at 800.  However, as outlined above, plaintiffs have suffered no cognizable loss, economic or otherwise, as a result of TJX's alleged conduct.  *See id.* at 800-01 (affirming summary judgment against plaintiffs whose car rental agreement contained "statutorily noncompliant" collision damage waiver when plaintiffs could not prove the violation caused them any loss, because they were not in an accident or otherwise harmed, influenced, or affected by the waiver); *State Res. Corp. v. Architectural Team, Inc.*, 433 F.3d 73, 85 (1st Cir. 2005) (affirming denial of motion to amend to add Chapter 93A claim when plaintiffs' alleged loss was "not a result of [defendant mortgagee's] conduct, but [was] a consequence of the foreclosure process and its requirements.").  Because plaintiffs have failed to plead loss and causation, their Chapter 93A claims must be dismissed, even if Chapter 93A applied to their claims.

Further, plaintiffs' Chapter 93A claims fail for other, independent reasons.  First, mere negligence or a breach of contract, without more, is plainly insufficient to state a claim for relief under the statute.[22]  Also, given that plaintiffs' Chapter 93A claim sounds in negligence, the economic loss doctrine should be applied to bar plaintiffs' Chapter 93A claims, just as it bars plaintiffs' negligence claims.[23]

---

[22] *See Burns ex rel Office of Public Guardian v. Hale & Dorr LLP*, 445 F. Supp. 2d 94, 97 (D. Mass. 2006) (citing *Squeri v. McCarrick*, 588 N.E.2d 22, 25 (Mass. App. Ct. 1992)) ("Negligent conduct, standing alone, does not render an actor liable under Chapter 93A."); *Massachusetts Employers Ins. Exch. v. Propac-Mass, Inc.*, 648 N.E.2d 435, 438 (Mass. 1995) ("[A] breach of contract alone does not amount to an unfair act or practice under G.L. c. 93A, § 2 . . . .").

[23] *Compare Canal Elec. Co. v. Westinghouse Elec. Co.*, 973 F.2d 988, 998 (1st Cir. 1992) ("[T]he district court held that Chapter 93A does not permit the customers of one of the contracting parties to recover damages for that kind of economic harm in this kind of lawsuit.  We agree with the district court.") *and W.R. Constr. & Consulting, Inc. v. Jeld-Wen, Inc.*, No. 01-10098 (DPW), 2002 WL 31194870, at *10 (D. Mass. Sept. 20, 2002) ("I hold that the plaintiff cannot recover for its economic loss to the extent that doctrine applies to Chapter 93A.") *with Cummings v. HPG Int'l, Inc.*, 244 F.3d 16, 26 n.3 (1st Cir. 2001) ("Massachusetts courts have generally held that the economic loss doctrine does not bar recovery in actions brought under Chapter 93A.") *and JRJ Constr. Co. v. R.W. Granger & Sons, Inc.*, 1999 WL 706717, at *14 (Mass. Super. July 29, 1999) ("[Defendant] argues that [plaintiff's] losses are purely

### C.    Plaintiff ACohen's Chapter 93A Claim in Count V Should be Dismissed

The claim of plaintiff ACohen Marketing & Public Relations, LLC ("ACohen") under Chapter 93A, § 11 as set forth in Count V of the Complaint should be dismissed.  In order to bring a claim under § 11, the plaintiff must be "engage[d] in the conduct of any trade or commerce," which requires it to plead that the conduct giving rise to the violation occurred in connection with some transaction in a business context.  *M. DeMatteo Constr. Co. v. Century Indem. Co.*, 182 F. Supp. 2d 146, 160 n.9 (D. Mass. 2001).  The Complaint, however, is devoid of any allegation that Anne Cohen's purchases using ACohen's debit card were business transactions made in the conduct of any trade or commerce.[24]  *See Bell Atl. Corp. v. Twombly*, No. 05-1126, *slip op*. at 8 (U.S. May 21, 2007) (emphasizing that, on a motion to dismiss, plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level.").  For this reason, plaintiff's claim, if any, may only proceed under § 9.  *See* Mass. Gen. Laws ch. 93A, § 9(1) (providing that the ability to sue under § 9 is available to "[a]ny person, other than a person entitled to bring action under section eleven of this chapter.").

Moreover, ACohen's § 11 claim should be dismissed because plaintiff fails to plead the requisite "loss of money or property."  Mass. Gen. Laws ch. 93A, § 11.  In particular, plaintiff fails to allege that it suffered some "tangible economic harm or pecuniary loss as a result of the defendant['s] actions."  *Tech Plus, Inc. v. Ansel*, 59 Mass.App.Ct. 12, 19 (2003).   Here,

---

economic, and, consequently, summary judgment should be allowed under this doctrine.  However, [plaintiff's] claims against [defendant] are for bad faith decisions and violations of G.L.c. 93A.  The economic loss doctrine is inapplicable to these claims.") (internal citations omitted).

[24] The Complaint alleges no more than that "ACohen Marketing & Public Relations, LLC is headquartered in Kingston, New York," Compl. ¶ 11, and that "[p]laintiff Anne Cohen used ACohen's debit card to make purchases at Marshalls in at least November and December 2006." *Id*. ¶ 60.  The Complaint does not allege, for instance, that the transactions were purchases of supplies for the business. *See Stop & Shop Supermarket Co. v. Loomer*, 837 N.E.2d 712, 718 (Mass. App. Ct. 2005) (observing that claim might fall under § 11 if plaintiff was purchasing "large quantities . . . of supplies for his business.").

"'[m]oney' means money, not time, and . . . 'property' means the kind of property that is purchased or leased, not such intangibles as a right to a sense of security, to peace of mind, or to personal liberty." *Id.* (citing *Baldassari v. Public Fin. Trust*, 369 Mass. 33 (1975)).  Plaintiff ACohen alleges that it spent time rectifying its finances and that it was unable to order certain items after its bank cancelled its debit card.[25]   Any time so expended is not a cognizable loss within the meaning of § 11, and was in any event the result of actions by a third party, not by TJX.  *See State Res. Corp.*, 433 F.3d at 85.

## IV.   PLAINTIFFS FAIL TO STATE A CLAIM FOR BREACH OF CONTRACT

### A.    Plaintiffs May Not Recover on a Third Party Beneficiary Theory Under Count II

Plaintiffs allege in Count II of the Complaint that they are third party beneficiaries of TJX's contracts with financial institutions that purportedly required TJX to safeguard customer data.  Compl. ¶ 123.  However, the only agreements even arguably relevant to Plaintiffs' claims are TJX's Bank Card Merchant Agreements (the "Merchant Agreements")[26] with its acquiring bank, Fifth Third Bank ("Fifth Third"), which *specifically disclaim the existence of any third party beneficiaries*.[27]  Blais Decl., Ex. B ¶ 17; Ex. C ¶ 18.

---

[25] Compl. ¶¶ 61-62.

[26] The Court may properly consider the Merchant Agreements in deciding this motion.  *See* Compl. ¶ 123; *Beddall v. State Street Bank & Trust, Co.*, 137 F.3d 12, 17 (1st Cir. 1998) (documents incorporated by reference in a plaintiff's complaint may be reviewed on a motion to dismiss without converting the motion into one for summary judgment).  The Merchant Agreements provide that they "shall be governed by, and construed and enforced in accordance with, the laws of the State of Ohio."  *See* Blais Decl., Ex. B ¶ 24; Ex. C ¶ 23.  Massachusetts courts generally enforce choice of law provisions, and accordingly this memorandum applies Ohio law, although the outcome would not differ if another jurisdiction's law were to apply.  *See Vesprini v. Shaw Inds., Inc.*, 221 F. Supp. 2d 44, 61 (D. Mass. 2002) ("With regard to claims for breach of contract, '[c]hoice of law ... provisions are routinely enforced in the Commonwealth, if enforcement is fair and reasonable.'") (citing *Stagecoach Transp., Inc. v. Shuttle, Inc.*, 741 N.E.2d 862 (Mass. App. Ct. 2001)).

[27] Under the Merchant Agreements, Fifth Third serves as TJX's acquiring bank for all debit transactions and all credit transactions of the named plaintiffs identified by them in the Complaint.  *See* Blais Decl., Exs. B, C; Compl. ¶¶ 55, 60, 63, 69, 74, 76, 80, 81.

Plaintiffs' third party beneficiary claim thus fails because plaintiffs are, at most, merely incidental beneficiaries of the Merchant Agreements. *See Hill v. Sonitrol of Southwestern Ohio, Inc.*, 521 N.E.2d 780, 784-85 (Ohio 1988) (incidental beneficiaries may not recover from a promisor for a breach of contract). Whether a third party is an intended beneficiary is judged by the parties' intent, which may be evidenced by the "clear terms of the contract." *Hill*, 521 N.E.2d at 785 (applying Restatement (Second) of Contracts § 302, which provides that a contract may create intended third party beneficiaries "*[u]nless otherwise agreed* between the promisor and promisee") (emphasis added). The Merchant Agreements clearly express TJX's and Fifth Third's intent to deny third parties the ability to enforce their contract, specifically providing that

> This Agreement is for the benefit of, and may be enforced only by, Bank and Merchant and their respective successors and permitted transferees and assignees, *and is not for the benefit of, and may not be enforced by, any third party*.

*See* Blais Decl., Ex. B ¶ 17 (emphasis added); *see also id.* Ex. C ¶ 18 (same exclusion).

Courts have routinely held that a third party cannot sue to enforce a contract that affirmatively disclaims the existence of third party beneficiaries. *See O. Ahlborg & Sons, Inc. v. United States*, 74 Fed. Cl. 178, 189 (Fed. Cl. 2006) (explaining that a third party cannot be an intended beneficiary when the contracting parties have agreed to the contrary, citing Restatement (Second) of Contracts § 302); *Cities Serv. Co. v. Gulf Oil Corp.*, 797 P.2d 1009, 1011-12 (Okl. App. 1990) (collecting authorities); *CMC Elec. Co., Inc. v. J.D. Williamson Constr. Co., Inc.*, No. 98-A-0076, 1999 WL 1073685, at *2 (Ohio App. Nov. 5, 1999) (holding that plaintiff could not sue to enforce contract as third party beneficiary where agreement contained exclusion); *Matheny v. Ohio Bancorp*, No. 94-T-5022, 1994 WL 738734, at *5 (Ohio App. Dec. 30, 1994) (same).

-17-

For this reason, a federal court denied third party beneficiary claims alleging similar breaches of the merchant agreements between Fifth Third and another retailer in the wake of another security breach.  Construing a nearly identical exclusion in those parties' merchant agreement, the court rejected plaintiffs' claims that they could sue to enforce the agreement between Fifth Third and the retailer as third party beneficiaries.  *See Banknorth, N.A. v. BJ's Wholesale Club, Inc.*, 442 F. Supp. 2d 206, 211 (M.D. Pa. 2006); *Pennsylvania State Employees Credit Union ("PSECU") v. Fifth Third Bank*, 398 F. Supp. 2d 317, 323-26 (M.D. Pa. 2005); *Sovereign Bank v. BJ's Wholesale Club, Inc.*, 395 F. Supp. 2d 183, 191-93 (M.D. Pa. 2005).  The court concluded third party beneficiary claims are plainly disallowed where, (as here) a contractual exclusion of such claims is present.[28]

Therefore, Count II of the Consolidated Complaint should be dismissed.

### B.       Plaintiffs' Implied Contract Claim In Count III Fails

Plaintiffs also claim in Count III of the Consolidated Complaint that, when they provided data during transactions at TJX, they entered into implied contracts that obligated TJX to safeguard the data and notify plaintiffs promptly of any theft.  Compl. ¶ 126.  Plaintiffs thus allege the breach of an implied-in-fact contract, the existence of which is inferred from the parties' conduct in the absence of an express agreement.  *See Hercules, Inc. v. United States*, 516 U.S. 417, 424 (1996) ("An agreement implied in fact is founded upon a *meeting of minds*, which, although not embodied in an express contract, is inferred, as a fact, from conduct of the parties showing, in the light of the surrounding circumstances, their tacit understanding.") (internal

---

[28]  The court rejected plaintiffs' attempt to analogize to the minority of cases where courts have declined to enforce such exclusions, noting the unique circumstances where courts have done so, such as where the agreement is solely for the third party's benefit, or where the third party is directly involved in its negotiation, circumstances that are also not present in this case.  *See, e.g., PSECU*, 398 F. Supp. 2d at 325-26.  *See also* Blais Decl., Ex. A, *CUMIS Ins. Soc.*, No 05-1158, *slip op.* at 4 (dismissing third party beneficiary claim based on identical contract language).

quotations omitted; emphasis added).  However, plaintiffs' claim fails because the Complaint is devoid of any allegation indicating that the plaintiffs and TJX ever reached an agreement with each other – *i.e.*, no meeting of the minds between the parties is alleged regarding TJX's treatment of customer data.

As with any other contract, an implied-in-fact contract requires the parties' mutual intent to enter an agreement.  *See Baltimore & O.R. Co. v. U.S.*, 261 U.S. 592, 598 (U.S. 1923) (implied-in-fact contract "will not be implied unless the meeting of minds was indicated by some intelligible conduct, act or sign"); *Massachusetts Eye & Ear Infirmary v. QLT Phototherapeutics, Inc.,* 412 F.3d 215, 230 (1st Cir. 2005) (claim for breach of an implied contract fails absent evidence of parties' agreement on essential terms); *In re D. Federico Co., Inc. v. New Bedford Dev. Auth.*, 8 B.R. 888, 897 (D. Mass. 1981) (implied contract still requires all the elements of an express contract).

Plaintiffs plead no basis from which mutual intent may be inferred, and instead suggest that, when customers tender a payment card instead of cash, or ask to return goods without a receipt, TJX binds itself to a host of obligations with respect to the information customers choose to provide.  *See California Emergency Physicians Med. Group v. PacifiCare of California*, 4 Cal. Rptr. 3d 583, 592 (Cal. Ct. App. 2003) ("In order to plead a cause of action for implied contract, the facts from which the promise is implied must be alleged."); *see also Twombly*, *slip op*. at 8 (emphasizing that, on a motion to dismiss, plaintiffs cannot rely on "labels and conclusions, and a formulaic recitation of the elements of a cause of action . . . .").  Though a contract's existence may be implied from the parties' conduct, one party's unilateral understanding does not suffice.  *See Prescott v. Morton Int'l*, 769 F. Supp. 404, 410 (D. Mass. 1990) (implied-in-fact contract arises from "conduct that would lead a reasonable person in the

10566480_9

other party's position to infer a promise in return for performance or promise" (quoting Farnsworth, *Contracts* § 3.10 (1982)); *see also Situation Mgmt. Sys. Inc. v. Malouf, Inc.*, 430 Mass. 875, 878 (2000) (observing that "it is axiomatic that to create an enforceable contract, there must be agreement between the parties on the material terms of that contract"); *Durgin v. Pillsbury Lake Water Dist.*, 903 A.2d 1003, 1006 (N.H. 2006) (one party's subjective expectations are insufficient to create an implied contract).   Because Plaintiffs offer nothing more than the bare allegation that TJX agreed to safeguard customer data and notify plaintiffs promptly of any theft, their implied contract claim in Count III must be dismissed.

## CONCLUSION

For the reasons set forth herein, TJX respectfully requests that the Court dismiss the Complaint in its entirety.

> *Respectfully submitted,*
>
> THE TJX COMPANIES, INC.
>
> /s/ Harvey J. Wolkoff
> Harvey J. Wolkoff (BBO #532880)
> Mark P. Szpak (BBO #546261)
> Brian R. Blais (BBO #660601)
> ROPES & GRAY LLP
> One International Place
> Boston, Massachusetts 02110-2624
> (617) 951-7000

Dated:  June 12, 2007

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on June 12, 2007.

> /s/ Harvey J. Wolkoff
> Harvey J. Wolkoff

10566480_9